STATE, RESPONDENT, *v.* MULLINS, APPELLANT.

(No. 4,174.)

(Submitted June 14, 1918. Decided June 21, 1918.)

[173 Pac. 788.]

*Criminal Law—Grand Larceny—Possession of Stolen Property —Evidence—Circumstantial Evidence—Insufficiency.*

Grand Larceny—Possession of Stolen Property—Evidence.
  1. Possession of property recently stolen is only a strong circumstance indicating guilt, not alone sufficient to warrant conviction of the offense of larceny.

Same—Circumstantial Evidence—When Sufficient.
  2. When a conviction is sought upon circumstantial evidence, the proof must be such as not only to authorize a belief in the guilt of the accused, but also to exclude every other reasonable hypothesis.
  [As to circumstantial evidence, see notes in 62 Am. Rep. 179; 97 Am. St. Rep. 771.]

Same—Conviction—*Quantum* of Evidence Required.
  3. One charged with crime may be convicted only upon evidence establishing his guilt beyond a reasonable doubt, *i. e.*, upon proof such as to logically compel the conclusion that the charge is true.

Same—Evidence—Insufficiency.
  4. Evidence *held* insufficient to warrant conviction of the crime of grand larceny.

*Appeal from District Court, Beaverhead County; Jos. C. Smith, Judge.*

———

Authorities discussing the question as to whether possession of recently stolen property is evidence of burglary and larceny are collated in a note in 12 L. R. A. (n. s.) 199.

Benjamin Mullins was convicted of grand larceny, and from the judgment and an order denying his motion for new trial, he appeals. Reversed and remanded.

*Mr. John Collins,* for Appellant, submitted a brief and argued the cause orally.

The evidence tended to show wrongful conduct of defendant after the theft, rather than participation in the theft. This presented a new phase which required a proper instruction, so that the jury might not, in their confusion, convict the defendant of a theft of which they might not think him guilty, even though they believed him guilty of an offense subsequent to the taking. (*State* v. *Gilmer,* 97 N. C. 429, 1 S. E. 491; *Smith* v. *State,* 7 Tex. App. 414; *Noland* v. *State,* 3 Tex. App. 598; *Riojas* v. *State,* 8 Tex. App. 49; *Davis* v. *State,* 10 Tex. App. 31.)

The court gave abstract principles of the law of larceny which, perhaps, illustrated the theory of the state, but no instruction by which the jury might be advised as to the liability to or immunity from punishment of a person charged with larceny, and whom the jury might reasonably believe to be guilty, merely as an accessory after the fact. The jury was left to apply the principles as best they could. (*State* v. *Trosper,* 41 Mont. 442, 109 Pac. 858; *Wasson* v. *State,* 3 Tex. App. 474.) The giving of statutory definitions will not suffice. (*Heath* v. *State,* 7 Tex. App. 464; *Rutherford* v. *State,* 15 Tex. App. 236; *Jones* v. *State,* 33 Tex. Cr. 492, 47 Am. St. Rep. 46, 26 S. W. 1082.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for the State, submitted a brief; *Mr. Woody* argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

By an information filed in the district court of Beaverhead county G. H. Moller and Benjamin Mullins were jointly charged with the crime of grand larceny, in that on or about

the 13th of July, 1917, they did steal, take and carry away 1,000 pounds of wool of the value of $500, the property of P. A. Dansie. Both the accused were apprehended, but pending trial Moller died. Mullins was arraigned, pleaded not guilty, and upon his trial was convicted. From the judgment as well as from an order denying his motion for new trial he appeals, and the grounds upon which a reversal is sought are the refusal of two offered instructions and that the evidence is insufficient to justify the verdict.

The salient material features as presented by the state are: P. A. Dansie, a wool-grower residing near Daly's Spur, about fourteen miles south of Dillon, was in the fore part of July engaged in hauling his wool and loading it on cars at Daly's Spur. He needed men, and through his brother at Dillon hired Mullins and one other man whose name is not given. Mullins had arrived in Dillon a day or two before and was seen with Moller, who introduced him to Opp as an old acquaintance. Mullins appeared at Dansie's on Tuesday, July 10, working there the afternoon of that day and the whole of the following two days, quitting on Friday, the 13th. On Wednesday, the 11th, he borrowed a horse from Dansie to go to the public telephone station at Henneberry's, Dansie having no telephone. Henneberry's is a short distance away, and Mullins said as he left, "I am wanted at Helena as a witness," or that he had to phone to Helena because he was wanted as a witness there. Arriving at the station, he had Henneberry call up Moller, who was working for Sullivan's barn at Dillon. He spoke a few sentences to Moller which Henneberry did not hear, except the last phrase, which was, "at Daly's Spur," or "I am at Daly's Spur." Shortly after Mullins began to work one of the wagons broke a tongue, and Dansie sent to Dillon for another tongue and a reach, expecting them to arrive on the local freight Thursday evening, July 12. He mentioned the matter at supper, and Mullins offered to go to the station to see if they had come. Mullins went, and had not returned to the ranch at 10:30 that evening. On the same or

the next evening Dan Sullivan went to his barn at 11:30, expecting to find Moller, who had charge at night. Moller was not there, but was out with the mule team, as Sullivan was told, and had left the barn in charge of one Naylor. On Friday morning Moller paid Opp, the day man at the barn, $10 for a drive which Moller said he had made with the mule team the night before. Mullins quit Dansie's Friday morning, taking a check for $9, the wages due him, but before he left he was heard to ask a fellow-employee for a loan of fifty cents to pay his fare to Dillon. Saturday morning at 6:30 or 7 o'clock Moller, accompanied by Mullins, came to the house of Bassett, a dealer in hides, pelts and wool, driving the Sullivan mule team and a wagon loaded with 619 pounds of wool in small sacks. Moller reported to Bassett that the wool had been shorn from a stray band and sold it to Bassett for $309.50. Bassett gave his check, which Moller cashed. Mullins took no part in these transactions except to hold the team which seemed to be bad. Later in the day Bryan saw Mullins at a saloon in Dillon buying drinks, and Mullins showed a roll of money containing at least five $20 bills. The Dansie wool arrived at Dillon on Monday the 16th, when it was ascertained that three sacks of it were gone. The wool sold to Bassett was identified as Dansie's. The sacks in which it had been first packed were found behind Sullivan's barn. There was also evidence in the loft of Sullivan's barn that wool had been handled there.

That this evidence suffices to establish Moller's guilt need not be doubted. That one may conjecture circumstances which will show an opportunity in Mullins to take part in the stealing and which, together with the proven facts, would justify a strong suspicion against him cannot be questioned. But how, as it stands, shall this evidence be said to command the inference, so that one may say beyond reasonable doubt that Mullins took part in the stealing, or, being present, aided and abetted therein, or, not being present, had advised or encouraged the same? The only positive fact implicating Mullins is that he and Moller drove to Bassett's, where he held the team while

Moller sold the wool; and, assuming Moller's possession to be
[1]   that of Mullins, still possession of property recently
stolen is only a strong circumstance, not alone sufficient to war-
rant conviction (*State* v. *Trosper,* 41 Mont. 442, 109 Pac. 858) ;
[2]   for, when a conviction is sought upon circumstantial evi-
dence, the proof must be such as not only to authorize a belief
in the guilt of the accused, but also to exclude every other rea-
sonable hypothesis (*State* v. *Postal Tel. Co.,* 53 Mont. 104, 161
Pac. 953).   Is it unthinkable that the wool may have been
stolen at some other time than Thursday evening; that Mullins
may not have been present at the time; that Mullins may have
known nothing of the stealing; that he may have believed the
wool to be Moller's; that his aid in transporting it to Bassett's
may have been innocent, or at least without guilty knowledge;
that the money he exhibited on Saturday may have come from
some other source ?   Grant that the conjectures, the suspicions,
[3]   the probabilities are all the other way, a defendant may
not be convicted on conjectures, however shrewd, on suspicions,
however justified, on probabilities, however strong, but only
upon evidence which establishes guilt beyond reasonable doubt,
that is, upon proof such as to logically compel the conviction
that the charge is true.   (*State* v. *Taylor,* 51 Mont. 387, 153
Pac. 275; *State* v. *Postal Tel. Co., supra.*)

The case made by Mullins, so far from aiding, tends rather
[4]   to shake, the tentative suspicions aroused by that of the
state.   These are the important circumstances against him: (a)
His message to Moller on Wednesday; (b) his absence from the
ranch on Thursday evening; (c) Moller's absence from the
barn on Thursday evening; (d) Mullins' quitting Dansie's on
Friday; (e) Mullins' presence with Moller at Bassett's on
Saturday morning; (f) Mullins having funds on Saturday
afternoon; and upon them he sheds considerable light.   (a)
As to the message he expresses surprise that Henneberry did
not hear it all; he was wanted as a witness in a case which
he understood had been transferred to Helena; he expected
mail concerning it to come to him at Dillon; he called Moller

to instruct that his mail should be held there, as he intended to quit Dansie's, and his last sentence was to say that he was then at Daly's Spur. Some confirmation of this lies in the fact that he says—and is not contradicted—that he exhibited to the county attorney a subpoena calling him in the case to which he referred. (b) Whether Mullins was absent from the ranch on Thursday depends altogether on when the new tongue and reach arrived, for that, according to Dansie, was the occasion of his going to the station. Dansie says they were to come by local freight. The records of the Dillon Implement Company show that the order for them was filled, and they were turned over to the express company at Dillon for shipment on Tuesday, the 10th. As Daly's Spur is only fourteen miles from Dillon, the likelihood is they arrived on the same or the next day. Mullins says they arrived on Tuesday the 10th and he got them that night. If so, his absence to go for the tongue and reach, which was his only absence, save for the short journey to the telephone, does not at all fit the case of the state on any theory of co-operation with Moller in the theft. (c) Whether Moller's absence from the barn was on Thursday or on Wednesday is left somewhat in doubt. In either case, however, it had no such relation as the state assumes to Mullins' absence from the ranch when he went after the tongue and reach, if that event occurred on Tuesday. (d) Mullins explains his quitting on Friday by saying that his working mate was lazy and did not do his share, and he got tired of working for two. This is confirmed to some extent by Dansie himself, who testified of complaints or rumors about Mullins' working mate; only Dansie thought the man was sick. (e) Mullins had known Moller prior to coming to Dillon, had stopped with him on first arriving at Dillon, and his stopping with Moller on Friday night was not of itself unnatural. Being Moller's guest, he might properly, as he says he did, assist Moller to load some wool from the barn loft to the wagon, and might, as he says he did, have accepted Moller's assurance that the wool was his and had come from stray sheep. If the wool was in small sacks

when Mullins first saw it, as he says it was, he could not know that it belonged to Dansie and would have no reason for refusing to hold the team while Moller sold and unloaded it. So far as the record shows, the transaction was not so covert as to compel either suspicion or caution on the part of Mullins toward the man who had harbored him. Moreover, Mrs. Bassett testified that after this Moller appeared again with another person and a load of wool which he sold to Bassett. (f) The episode of the money occurred in a saloon. There was drinking, Bryan says four or five rounds, and at what stage of the festivities Bryan saw the money does not appear. Mullins says he had several bills, only one of which was a twenty, the others being ''1's,'' not to exceed $26 in all, part of which he had left at Dillon on his way down to Dansie's and recovered on his return.

We may not, of course, usurp the functions of the jury in this case, who were best able to judge of the candor, and thus the credibility, of the witnesses; but we must say that the written record of defendant's testimony creates a favorable impression and persuades one to the belief that his conviction is largely due to the facts that Mullins and Moller were friends, that Mullins was with Moller when the wool was sold, and that Mullins ought to have known, and therefore did know, that Moller was selling stolen wool. And it was against just this contingency that the appellant was struggling in the instructions offered. No. 1, we think, was properly refused as too abstract and as covered. Nor can we impute fault to the trial court for refusing No. 3, because the last sentence of it was vague and misleading; but Mullins was, we think, entitled to have the substance of it given more definitely than appears in the instructions as read to the jury, and this will doubtless be done on a retrial of the case.

There is no prejudicial error among the assignments presented to us, save the refusal of a new trial for insufficiency of the evidence.

For this the judgment is reversed and the cause remanded for new trial.

                                        *Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.