STATE, RESPONDENT, *v.* KERRIGAN, APPELLANT.

(No. 6,647.)

(Submitted May 5, 1930. Decided May 19, 1930.)

[287 Pac. 942.]

*Mr. D. H. Morgan* and *Mr. T. P. Stewart,* for Appellant, submitted a brief; *Mr. Stewart* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. L. V. Ketter,* Assistant Attorney General, submitted a brief; *Mr. Ketter* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Joe Kerrigan and Ed. Corcoran were found guilty of attempting to commit the crime of rape and were sentenced to the state prison. Kerrigan has appealed from the judgment. That Corcoran attempted to commit the crime there can be no doubt. If the judgment against appellant can be sustained, it must be upon the ground that he aided and abetted Corcoran.

The offense was committed on the evening of October 29, 1929. All the parties concerned were residents of Anaconda. Prosecutrix, fifteen years of age, knew Corcoran by sight and had seen appellant frequently but said she did not then know

his name. Appellant, twenty-one years of age, said he had met her on a previous occasion. Corcoran, thirty years old, had a wife and three children. On the evening of the occurrence prosecutrix and her elder sister were strolling along Park Avenue in Anaconda. They passed appellant and Corcoran, who followed and overtook them. Both men were under the influence of intoxicating liquor. When the men joined the girls, the sister of prosecutrix left the group immediately. The men, according to prosecutrix, took hold of her and tried to force her to go across toward Commercial Avenue. When she resisted they took her up Park Avenue, one on each side holding her by the elbow and wrist. Upon reaching the doorway of the Standard Drug Store, they offered her a drink of whisky, which she refused. Appellant had the bottle and it was he who asked her to drink. Corcoran then took the bottle. After standing there and asking her to drink and "tormenting" her, as she said, the men took her by the arms and made her go up Park Avenue to the City Drug Store; when they got about two doors from the corner, McCormick, a traffic officer, came up, and asked what the trouble was, and she told him the men were taking her against her will, and she asked him to make them go away and leave her alone. McCormick, she said, refused to interfere; he did not give her any aid. While appellant and McCormick were engaged in conversation, Corcoran took prosecutrix away. "Then Corcoran took me away and Kerrigan stayed there and talked to McCormick," she said.

Prosecutrix told in detail how Corcoran, placing his arm around her in such a position that he could lift her a little, conducted, pushed, her along until he forced her into an alley south of Park Avenue. There they stopped upon a platform back of the Kelly store, she crying and Corcoran talking to her. They were overheard by Mr. Schurter, the store watchman, who told them to go away. Schurter immediately summoned the sheriff. Corcoran took the girl into what is described as an alcove back of another store, where he placed

her upon the ground, and but for the timely arrival of the sheriff doubtless would have completed his design.

Prosecutrix testified: "I do not know where Kerrigan was all this time, but he had gone by us after Corcoran had me in the alley. Just Corcoran was with me when we first went into the alley and we were there alone, and the two of us went up by the platform in back of the Kelly store. Then Kerrigan went by us but did not stop. He just walked by in the direction of Cherry Street. He probably noticed us, but he never spoke, and I did not see him again until he was arrested by the sheriff." Again she said: "I don't know where Kerrigan was at this time. I did not see Kerrigan until I saw him at the sheriff's car. He had not been in the alley with us at all and I did not see him except when he passed us in the alley. I don't know where he stopped." Prosecutrix said she told the sheriff there had been an attempt made to hold sexual intercourse with her. "I said they had attempted it because I knew if Corcoran was successful Kerrigan would be on the lookout some place. That is just my notion about it."

The sheriff and Mr. Swartz, his deputy, in a car arrived at the place of mischief shortly after Schurter telephoned. Corcoran and the girl were in the alcove back of the fifteen cent store. Appellant was about fifteen or twenty feet to the east of them according to Swartz's estimate, ten feet as the sheriff estimated. Appellant, said Swartz, was standing back of the Kelly Commercial Company store. "He was not back of the fifteen cent store, and he was not with Corcoran and this girl. He was not talking to them at that time." From where appellant was standing it was not possible to observe Corcoran and the girl.

McCormick testified that he was walking down the street on his way to the city hall when appellant, who was talking to prosecutrix, called to him, and when he joined the party appellant said to the girl, "Go ahead now and tell him what you were going to tell him," but the girl did not say anything, just smiled. The girl then joined Corcoran, while appellant

remained talking to McCormick. Appellant and McCormick parted, said McCormick, some little time after Corcoran and the girl had gone.

Appellant admitted being with Corcoran and overtaking prosecutrix and her sister. Admitted offering prosecutrix a drink, but said he did not intend to have her drink it on the street. Denied that he and Corcoran had led the girl up Park Avenue or anywhere else. His explanation of the meeting with McCormick was that prosecutrix had said as they walked along that a man as drunk as he (appellant) should be in jail, and that she ought to call an officer to put him there to sober up, upon which he called to McCormick, and when the officer came up to them he (appellant) said to prosecutrix, "Here is an officer now, if you want him," telling the officer what prosecutrix had said, and McCormick said, "You don't belong in jail." While he was talking with McCormick, appellant testified, he saw Corcoran and the girl, arms locked, go into the alley. After leaving McCormick, he went to the alley, where he noticed Corcoran and the girl standing by the doorway of the Kelly Commercial Company, but he had no more than reached the spot when someone told them to move on. The three then went down the alley alongside the alcove of the Sparrow Drug Store, where he and Corcoran had a drink. The girl was asked if she wanted a drink, but refused. Appellant said he then went down the alley about twenty feet, upon a private mission, and while he was there the sheriff's car drove into the alley. He knew Corcoran and the girl were in the alcove, but they were out of his (appellant's) view, and he did not hear any of the conversation between them while he was there. He did not know anything about what went on in the alley that night between Corcoran and the girl, either as to their conversation or their conduct.

We have analyzed the testimony in the case, and all of it, with great care. Whether we disregard the testimony offered by appellant or include it, we arrive at the same result: We are unable to find any substantial evidence to sustain

the verdict against appellant. To do so we must rely upon surmise, conjecture. It is certain that no attempt to rape the girl was made by either defendant upon Park Avenue; there was no talk or suggestion of carnal intercourse with her before McCormick arrived upon the scene. After stopping to talk with McCormick, appellant did not lay his hands upon the girl again, did not speak to her again, nor so far as the record discloses did he take the slightest part in what followed between Corcoran and her. When Corcoran conceived the intent to attack the girl, whether before or after he took her into the alley, we do not know. He was the one who attacked her, as prosecutrix time and again asserted. It cannot reasonably be contended upon the testimony that appellant was an accomplice of Corcoran in what took place in the alley. The most that appellant did there, and this is based upon his own testimony, was to drink with Corcoran. Counsel for the state say he acted as a lookout, but there is nothing in the testimony to substantiate the assertion. It is pure conjecture.

Neither by direct evidence nor reasonable inference does the record show that appellant aided, abetted, advised or encouraged Corcoran to perpetrate the offense. It is doubtless true that appellant in giving his testimony lied to shield himself and his co-defendant. It is doubtless true that his conduct throughout was reprehensible. If the girl's testimony is true, and we see no reason to doubt it, appellant acted, not as a gentleman, but as a drunken loafer. Instead of protecting a defenseless school girl, he attempted to bring about her delinquency by giving her moonshine whisky. He knew, or a decent man would have known, that the girl was in danger there in the alley with Corcoran. But these lapses from manly rectitude do not show him to have been an accomplice in the crime committed. "An accomplice is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime. (1 Words & Phrases [First Series, page], 75.) One may become an accomplice by being present and joining in the criminal act, by aiding and abetting another

in its commission, or, not being present, by advising and encouraging its commission; but knowledge and voluntary action are essential in order to impute guilt." (*State ex rel. Webb* v. *District Court,* 37 Mont. 191, 15 Ann. Cas. 743, 95 Pac. 593, 597.)

We have repeatedly announced the well-known doctrine, to ▉ which there is no dissent, that a defendant may not be convicted on conjectures, however shrewd, on suspicions, however justified, on probabilities, however strong, but only upon evidence which establishes his guilt beyond a reasonable doubt; that is, upon proof such as logically compels the conviction that the charge is true. (*State* v. *Mullins,* 55 Mont. 95, 173 Pac. 788; *State* v. *Cooper,* 78 Mont. 35, 252 Pac. 376, and cases cited.)

This determination makes it unnecessary to discuss other points raised in the briefs of counsel.

The judgment as to appellant Kerrigan is reversed, and the cause is remanded to the district court of Deer Lodge county, with direction to discharge appellant from custody.

ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.

MR. JUSTICE ANGSTMAN, being absent, did not hear the argument and takes no part in the foregoing decision.