STATE OF MONTANA, Plaintiff and Respondent, v. CARL
E. FRODSHAM, Defendant and Appellant.
No. 10156.
Submitted March 10, 1961. Decided May 25, 1961.
Amended June 1, 1961.
362 P.2d 413.

William A. Brolin, Anaconda, Thomas C. Malee, Anaconda,
for appellant. William A. Brolin argued orally.

Forrest H. Anderson, Atty. Gen., James J. Sinclair, Asst. Atty. Gen., Malcolm MacCalman, County Atty., Deer Lodge, for respondent. James J. Sinclair, Asst. Atty. Gen., and Malcolm MacCalman, County Atty., argued orally.

MR. CHIEF JUSTICE HARRISON delivered the Opinion of the Court.

This is an appeal from the third judicial district of the State of Montana, in and for the County of Powell from a judgment of conviction of the crime of kidnapping, with the intent to secretly confine rendered on October 29, 1959.

The fact situation in this matter is as follows:

On April 16, 1959, Lawrence M. Backman was employed as a correctional officer at the Montana State Prison. At about 4:00 p.m. on that day he was standing on a cat-walk on what is known as the old wing of the prison then relieving the officer on duty so he could eat his lunch. At that time he was armed with a loaded 30.30 rifle. From the cat-walk, the lobby can be observed and when the officer leaves his desk in the lobby it is customary to then feed the prisoners in isolation and when that occurs, the guard leaves the cat-walk and goes to isolation and stands guard there while they open the cells and give food to the inmates. Officer Backman in accordance with the custom left his post on the cat-walk at about 4:10 p.m. and proceeded in the direction of isolation when he was accosted by an inmate named Hubbard, who attempted to take the rifle away from Backman, and after a wrestling match he succeeded in disarming Backman.

Inmate Hubbard then marched the guard to the lobby floor where he was turned over to another inmate who took him in custody and transferred him to what is called the new wing. On the way, Backman was struck by another inmate who hit him on the nose which then started to bleed. He was also struck on the mouth and the inside of his mouth then commenced to bleed so thereafter Backman was bleeding from the

nose and mouth. Upon reaching the new wing he was met by the defendant Frodsham, who had a French knife in his hand. Frodsham walked behind Backman and stated ''Down the hole with the rest of them.'' They then proceeded to · a door that leads down to isolation, which was attended by another inmate who unlocked the door and defendant again remarked, ''Down in the hole with you.'' Backman entered the door and it was locked behind him. The door through which Backman entered isolation is the only means of getting in or out, and no means of communication exists in isolation.

After a period of time, estimated by the officer to be two and one-half hours, due to his pleading, he was removed from isolation. Upon arriving on the lobby floor, defendant Frodsham was there present and armed with the French knife. At that time defendant directed Backman to a certain cell and went over and opened the cell door and after Backman had entered, defendant closed the cell door. Between one-half or one hour later defendant came back to the cell and stated that arrangements had been made for Backman to go over to the hospital which was located a short distance away within the prison grounds. Defendant opened the cell door, still armed with the knife, which he held up in front of Backman's face, and told him when he got outside he was on his own, and that they were not responsible for what would happen to him. Backman, holding his hands high over his head, then departed and walked to the hospital where he was admitted. He further testified that his confinement was against his will.

During the time that Backman was confined in isolation he was not able to communicate with any of the custodial officers who were not then confined by the inmates. Backman did not get out of the prison until Saturday morning, April 18, when the National Guard came in, during all of which time he was never free to come and go as he pleased.

Floyd E. Powell, Warden of the Montana State Prison, testified that he was taken hostage by certain inmates of the

Prison about 4:00 p.m. on April 16, 1959, and was held until about 7:45 p.m. when he managed to get out of the inside of the institution. He further stated that there were no officials, guards, or members of his staff that were able to maintain custody or control of the inmates and that the inside of the Prison was in control of certain inmates. During the time he was a prisoner he saw the defendant who was carrying a knife. At the time he was in the Prison he was not able to tell where Backman was and he was unable to offer him any assistance at that time, and could not do so until about 4:00 a.m. on the morning of April 18, at which time the National Guard entered and established order within the Prison.

On July 23, 1959, an information was filed against the defendant charging him with the crime of kidnapping with the intent to secretly confine, a felony, committed, as follows, to-wit:

"That on or about the 16th day of April, 1959, and before the date of the filing of this Information, at and in the County of Powell, State of Montana, Carl E. Frodsham did then and there, wilfully, intentionally and without lawful authority confine one Lawrence M. Backman, with the intention to cause the said Lawrence M. Backman to be secretly confined within the State of Montana, against his, the said Lawrence M. Backman's will, all of which is contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the State of Montana.

"That the said Defendant, Carl E. Frodsham, was, on the 4th day of March, 1953, by Judgment duly given, rendered and made and entered by the District Court of the Third Judicial District of the State of Montana, in and for the County of Deer Lodge, convicted of the crime of An Infamous Crime Against Nature, a Felony, And Prior Conviction, on November 29, 1950, and sentenced

to imprisonment in the Penitentiary of the State of Montana, for the term of Forty (40) years, at hard labor.''

On August 13, 1959, defendant entered a plea of not guilty and his trial commenced on October 19, 1959. The jury returned a verdict on October 21, 1959, finding defendant guilty as charged.

On October 29, 1959, defendant was sentenced and commitment to the Montana State Penitentiary issued from the district court.

On May 10, 1960, defendant caused to be filed his notice of appeal from the judgment of conviction herein.

On February 20, 1961, appellant filed his brief in this court, and on March 3, 1961, the respondent, State of Montana filed a motion to dismiss this appeal upon two grounds, the first being that the notice of appeal was not filed within six months from the date judgment was rendered against defendant; the second being that the order of the district court granting additional time for the preparation and service of the bill of exceptions expired on March 12, 1960, and the bill of exceptions was not settled until May 10, 1960, or nearly sixty days after expiration of the time therefor.

As to the second ground, the record discloses that counsel for the State of Montana and the defendant entered into a stipulation that the bill of exceptions might be settled by the district judge and waived any notice as to time or place for the settlement. The district judge, relying upon such stipulation, settled the bill of exceptions. The situation here is akin to that appearing in Central Montana Stockyards v. Fraser, 133 Mont. 168, 320 P.2d 981. We do not deem it necessary to discuss this second ground further in view of what will hereafter be said.

A far different situation exists with respect to the first ground of the motion to dismiss.

Section 94-8105, R.C.M. 1947, provides:

''An appeal from a judgment may be taken within six

months after its rendition, and from an order within sixty days after it is made."

It is apparent from the record that the notice of appeal was not filed within the six-month appeal period as provided by our law.

In State ex rel. Treat v. District Court, 124 Mont. 234, 236, 221 P.2d 436, 437, it appeared that the relator had been found guilty of a felony after trial before a jury and was sentenced to the State Prison on January 20, 1949. On May 27, 1950, in a petition filed in this court the relator represented that he had made an oral request that he intended to appeal the judgment to this court. In that case we stated:

"The Constitution of Montana provides that 'appeals shall be allowed from the decisions of * * * district courts to the supreme court under such regulations as may be prescribed by law.' Art. VIII, § 15.

"R.C.M. 1947, § 94-8101, provides: 'An appeal to the supreme court may be taken by the defendant, as a matter of right, from any judgment against him.'

"The regulations prescribed by law for the taking of appeals in criminal cases so far as here pertinent are as follows:

"An appeal may be taken by the defendant from a final judgment of conviction, R.C.M. 1947, § 94-8103, entered in the district court within six months after its rendition, R.C.M. 1947, § 94-8105.

" 'An appeal may be taken by *filing* with the clerk of the court in which the judgment or order appealed from is entered or filed, a notice stating the appeal from the same, and *serving* a copy thereof upon the attorney of the adverse party.' Emphasis supplied. R.C.M. 1947, § 94-8106. * * *

" 'Where the statute requires that the notice of an appeal shall be *filed* with the clerk, an *oral notice in open court* is insufficient to give the appellate court jurisdiction, and

so is a written notice of *intention* to appeal.' Emphasis supplied. 24 C.J.S., Criminal Law, § 1711, p. 406, notes 42 and 43.

"Relator's time for *filing* and *serving* his notice of appeal expired July 20, 1949, being more than ten months prior to the date of the filing in this court of his petition for a writ of mandate.

"Relator's *oral* request that he *intended* to appeal * * * made *orally in open court'* on January 20, 1949, fails to conform to the regulations prescribed by R.C.M. 1947, § 94-8106, and is not only ineffectual but wholly insufficient to give this court jurisdiction, 24 C.J.S., Criminal Law, § 1711, page 406, notes 42, 43, hence, a copy of the trial and court record would be of no avail at this late date. 'The law neither does nor requires idle acts.' R.C.M. 1947, § 49-124."

Thus this court very definitely held that the notice of appeal must be timely filed in accordance with the statute.

Mr. Justice Davis in writing the opinion of this court in State v. Zumwalt, 129 Mont. 529, 533, 291 P.2d 257, 259, succinctly stated the reasons behind this rule when he wrote:

"Our power then to take appellate jurisdiction and review the case brought here pursuant to that writ stems from the Constitution of this state, Art. VIII, §§ 1, 2, 3 and 15; or we do not have that power at all. Yet the grant there to us of appellate jurisdiction is in every instance circumscribed by the mandate as well as the prohibition of our Constitution, Mont.Const. Art. III, § 29, that it be exercised 'under such regulations and limitations as may be prescribed by law', Art. VIII, § 2, or 'subject, however, to such limitations and regulations as may be prescribed by law', Art. VIII, § 3, or 'under such regulations as may be prescribed by law', Art. VIII, § 15.

"In State ex rel. Clark and Owens v. District Court, 128 Mont. 526, 278 P.2d 1000, 1001, and as recently as

January 20, 1955, we adhered to the rule in a civil case that the party aggrieved who would appeal must comply with the statutes which limit as well as regulate his right of appeal to this court. Otherwise we said he would not be heard here. The following excerpt from our opinion in that case is peculiarly pertinent to Zumwalt's appeal now before us: 'The right of appeal though guaranteed under the Constitution may be exercised only in obedience to the statutory regulations applicable.'

''Neither Zumwalt nor his lawyer obeyed in any particular the statutes of this state by which the legislature has constitutionally defined the limits of his right to appeal to this court for the review he asks of us.

''In the Owens case our opinion continued: 'Under the written law contained in the Constitution and statutes of Montana the defendants may not ignore and by-pass the statutes governing appeals and, in the absence of the taking of any appeal and by merely petitioning therefor, invest the supreme court with the requisite jurisdiction to review, set aside and annul District Judge Fall's order refusing to dissolve the attachment so issued out of the district court.'

''In the instant case, although the petitioner Zumwalt was present in person at the hearing in the district court, and was there represented by counsel, no appeal was taken or attempted consistent with our Constitution and Code of Criminal Procedure from the court's order or judgment with which that hearing was closed. This we emphasize; for as we ruled in the Owens case jurisdiction of an appeal can not be vested in this court merely by filing a petition with us. We take jurisdiction in the case of a criminal appeal only in obedience to the applicable statutes which define and limit both our jurisdiction and the defendant's right to be heard.''

The judgment having been rendered on October 29,

1959, the six-month period, provided by section 94-8105, R.C.M. 1947, expired on April 29, 1960, and this court lost jurisdiction to entertain the appeal.

The motion to dismiss on this ground being well-taken, it is hereby granted and this appeal is dismissed.

However, there are additional factors in this cause which must be given consideration. On July 23, 1959, following the filing of the Information in this cause in the district court, the defendant appeared personally in open court without counsel. He was handed a copy of the Information and it was read to him. The court then advised defendant of his right to be represented by counsel. Defendant stated he had no funds with which to employ counsel and desired the court to appoint counsel for his defense, whereupon the court appointed Thomas C. Malee, to represent the defendant and fixed July 30, 1959, for arraignment and entry of plea. Thereafter defendant's counsel filed a demurrer to the Information on July 30, 1959, which the court set for hearing on August 6. On that day the demurrer was argued and submitted to the Court and the court advised that the demurrer would be ruled upon on August 13. On that day defendant and his court-appointed counsel, Thomas C. Malee, were personally present before the court, at which time the demurrer was overruled and the defendant entered a plea of not guilty. On September 3, 1959, Thomas C. Malee, appearing as counsel for the defendant, moved the court that the name of William A. Brolin, be entered as associate counsel for the defendant, with no additional compensation to be given by reason of such association, which motion was granted. The cause was regularly set for trial and the defendant was at all times represented by his court-appointed counsel, Thomas C. Malee, and William A. Brolin. At the conclusion of the testimony, defendant's counsel moved for a directed verdict or dismissal of the information, which was denied. Following return of the jury verdict, the court fixed the time for sentencing the defendant

for October 29, 1959, on which date defendant's counsel filed a motion in arrest of judgment, notice of motion for a new trial, and motion for a new trial. Following imposition of sentence, counsel for defendant requested and were granted sixty days in addition to the time allowed by law in which to prepare, serve and file a bill of exceptions. Counsel for defendant further made a showing to the court that the defendant desired to appeal his conviction to the Supreme Court; that being an inmate of the Montana State Prison he was without funds and had no resources from which he could pay the costs incident to such an appeal and requested the court to make an order that the costs of such appeal be borne from public funds. The court thereupon ordered the court reporter to prepare the transcript on appeal for filing in the Supreme Court, the cost thereof to be a proper charge against the County of Powell, and likewise provided that all printing costs for filing the brief should be a proper charge against the County of Powell. Thereafter a showing was made to the court that the bill of exceptions could not be prepared within the time allowed and granted by the court and additional time would be necessary to complete it; the court granted additional time to and including the 12th day of March 1960 for such preparation.

We set forth these matters to show that court-appointed counsel for the defendant did diligently pursue the course provided by our laws for perfecting an appeal, except that they failed to timely file the notice of appeal which has resulted in our loss of jurisdiction.

We are therefore confronted with a grave and serious situation since defendant came before the district court without funds or resources and requested the court to appoint counsel to defend him. Having faith in the integrity and ability of Thomas C. Malee, the court appointed him as counsel for the defendant, to be paid by public funds, and thereafter appointed an associate at the request of the court-appointed counsel as

heretofore related. That counsel were diligent in the defense of their client up to a point we have heretofore recited, but for some reason, neglect, unfamiliarity with appellate procedure, or inadvertence, counsel have placed this defendant in the position of having his appeal dismissed. A far-different situation would confront us here if the defendant had employed his own counsel, in which instance it would be the exercise of his own judgment on the ability of such counsel as he chose.

Section 16 of Article III of our Constitution provides: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel; * * *"

Section 94-6512, R.C.M. 1947, provides: "If the defendant appear for arraignment without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desires the aid of counsel. If he desires and is unable to employ counsel, the court must assign counsel to defend him."

Compensation for such court-appointed counsel is provided under section 94-6513, as amended.

In State v. Blakeslee, 131 Mont. 47, 51, 306 P.2d 1103, 1105, this court had before it a case involving a court-appointed counsel for the defendant. In that cause the case had been set for trial on March 21, 1955, on which date defendant's counsel withdrew from the case. The court appointed other counsel and set the trial over to March 24, a period of three days. On March 24 court-appointed counsel asked a further postponement until March 28 because previous commitments had required his services and he needed additional time to prepare a proper and adequate defense. This court stated: "Inherent in the appointment of Mr. Daniels was the recognition by the trial judge of the defendant's need of new counsel, and as well that the appointment of a new attorney for him should be made effective to present his defense. In short, here it was not enough that the court merely appoint Mr. Daniels to

defend; when he did so, it was incumbent likewise upon the trial judge to give that appointment effect. [Citing authorities.]''

We believe that much the same reasoning applies here, the district court appointed counsel for the defendant and ordered preparation of the record for an appeal to this court, all at public expense. The defendant had no voice in the choice of such counsel, and it appears to us that in the interests of justice it is incumbent upon us to consider the contended errors in spite of the fact that we have had to dismiss the appeal.

In taking this course on this appeal we do not wish to be understood as establishing a precedent because we are mindful of the multitude of decisions of this court and other courts, state and federal, which hold that appeals not taken within the statutory time should be dismissed, regardless of the excuse for the delay. Likewise, it appears to be a uniform holding that an appeal being a creature of statute there is no denial of due process by such dismissal.

Defendant specified three errors. First, that the verdict is contrary to the requirements of the statute which provides the essential elements and the necessary requirements which would be required to justify a verdict of guilty; second, there is no testimony to sustain the allegations contained in the information that the defendant did seize forcibly or otherwise, or willfully aid or accomplish the seizure of the prosecuting witness, Lawrence Backman; and third, that the court erred in overruling and denying the defendant's alternative motion for a directed verdict or a dismissal of the Information.

We will proceed to discuss the first and third specifications of error.

Section 94-2602, R.C.M. 1947, provides:

"If any person shall willfully and without lawful authority, forcibly seize, confine, inveigle, decoy or kidnap any person, with intent to cause such person to be sent

234

or taken out of this state, or to be secretly confined within the same against his will, or shall forcibly carry or send such person out of this state against his will, he shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding ten (10) years. Any person charged with such offense may be tried in any county into or through which the person so seized, inveigled, decoyed or kidnapped shall have been taken, carried or brought.''

Defendant insists that it was incumbent upon the State to prove a preconceived plan of action by all who participated along the way from the disarming to the confinement and that the evidence is insufficient to do so. A fair interpretation of the testimony shows that defendant gained control over Backman willfully and without legal authority and secretly confined him in the prison against his will.

This issue involves a question of fact and it was fairly submitted to the jury for determination and decided adversely to defendant. We believe there was sufficient competent evidence to justify the jury in arriving at such a conclusion. See State v. Dougherty, 71 Mont. 265, 229 P. 735; State v. Broell, 87 Mont. 284, 286 P. 1108; State v. Neely, 90 Mont. 199, 300 P. 561.

We deem it unnecessary to discuss to ''secretly confine'' in view of our recent decision in State v. Randall, 137 Mont. 534, 353 P.2d 1054, because the language there is applicable here.

We hold that the court did not err in denying the alternative motion since the evidence was sufficient to justify the verdict.

█ As to the second specification of error it is argued by defendant that the evidence is insufficient to show he was an accomplice under the definition appearing in State v. Kerrigan, 87 Mont. 396, 287 P. 942.

The charging part of the information does not allege defendant forcibly seized Backman, but it does charge that he con-

fined him secretly against his will and it further does not charge defendant with being an accomplice.

Section 94-204, R.C.M. 1947, provides:

"All persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics, or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed."

This statute was before this court in State v. Simon, 126 Mont. 218, 225, 247 P.2d 481, 485, wherein appears the following:

"At common law the actual actor or perpetrator of a crime was charged as the principal in the first degree and one who was present and aided and abetted in a crime was the principal in the second degree. These distinctions have been eliminated in our Code. Under the sections quoted [sections 94-204 and 94-6423, R.C.M. 1947], it is immaterial whether the proof shows that the accused actually was the perpetrator of the offense or whether he aided and abetted. In either case he is a principal and may be tried and convicted as such." See also State v. Peters, 72 Mont. 12, 231 P. 392; 14 Am.Jur., Criminal Law, § 80, p. 823.

It would appear that under the uncontroverted evidence and the law as laid down in the statutes and opinions of this court that defendant was a principal and the jury were justified in so finding.

After careful perusual of the appellate record before us, we find no reversible error in the record of this trial.

236

One other matter requires comment. The transcript on appeal here, prepared at public expense, comprises two volumes totaling 284 pages. Commencing on page 29 and continuing to page 124 is the voir dire examination of the twelve jurors chosen to try this cause. No error was predicated on any part thereof nor upon the opening statements of counsel, comprising eight more pages in this record.

It is not possible for this court to determine who is at fault in bringing before this court over 100 pages of irrelevant matter, more than one-third of the transcript, and the district court is requested to examine this situation since certainly the public should not be required to pay for such irrelevant material.

MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.