## THE STATE OF IOWA v. JOHNSON.

1. **Arson: INDICTMENT.** An indictment charged that the defendant, at, &c., feloniously, &c., intending to set fire to and cause to be burned a certain barn, &c., did feloniously, &c., cause and procure and place a certain lighted candle in and among a certain quantity of hay and grass then and there being in the said barn, feloniously, &c., intending, by so causing, procuring and placing the said lighted candle as aforesaid, to set fire to the said hay and grain, and as aforesaid, feloniously, &c., cause the said barn to be burnt, contrary, &c.: *Held*, that it charged a crime under section 4227, Revision of 1860.

2. **Instruction:** RECORD. The judgment of the District Court will not be reversed for the refusal of the court to give instructions which were unobjectionable, when the record does not contain all the instructions which were given to the jury.

3. **Criminal law:** ARSON: EVIDENCE. The sufficiency of evidence to sustain an indictment for arson, discussed and determined.

*Appeal from Henry District Court.*

FRIDAY, OCTOBER 6.

THIS was an indictment for setting fire to certain material with intent to cause the burning of a barn, the property of one George Downs, of the value, &c. Verdict of guilty, judgment thereon, and the defendant appeals.

*J. F. McJunkin* and *Withrow & Smith* for the appellant.

*C. C. Nourse* (for the Attorney-General) for the State.

WRIGHT, Ch. J. — This indictment is based upon section 427 of the Revision, which declares that if any person set

1. ARSON: indictment. fire to any building, &c., *or to any material, with intent to cause any such building, &c., to be burnt,* he shall be punished, &c. The count upon which the conviction was had, charges that Henry Johnson, at, &c., on, &c., feloniously, &c., intending to (set) fire to and cause to be burned a certain barn, &c., did feloniously, &c., cause and procure, and place a certain lighted candle in and among a certain quantity of hay and grain, there and then being in the said barn, feloniously, &c., intending by so causing, procuring and placing the said lighted candle, as aforesaid, to set fire to the said hay and grain, and as aforesaid, feloniously, &c., cause the said barn to be burnt, contrary, &c.

It is first claimed that this count does not charge an indictable offense within the meaning of the statute. And the point made is, that it does not show that defendant

"set fire to" any "*material*," or in other words, that to place a lighted candle in certain material, with intent to burn the said material, and thereby the barn, is not an offense, unless the material was thereby ignited; that it is the ignition of this material, with intent, &c., which constitutes the offense, and that the act of thus placing the candle, which never set fire to anything in the barn or the barn itself, is harmless and not indictable.

It will be observed, that under this section of the statute, it is not necessary that there should be an *actual burning* of the whole or any part of the house or building. Such burning was necessary to constitute arson at common law, and is made indictable by the proceeding sections of chap. 166 of the Revision, of which section 4227 forms a part. Under these sections, neither an intention nor an actual attempt to burn a building, by putting the fire into or toward it, would be indictable, if no part of it be burned. (2 Whart. Cr. L., 1660 ; 2 Russ., 548.) But the burning of any part, however small, completes the offense, the same as of the whole. 1 Bish. Cr. L., §§ 188, 321 ; *Cone* v. *Van Shaack*, 16 Mass., 105 ; *Reg* v. *Russell*, 1 C. and M., 541. The section now under consideration, however, punishes the attempt to burn a building, by setting fire to any material with intent to cause such building to be burnt. Not that the mere setting fire to the material, in a situation when without more, it could not communicate to the building, would be indictable. Thus, if one should light a torch and avow his intent to apply it to a building, but for any cause failed to execute his intention, this would not render him liable. But if he should apply the torch, the offense would be complete, though no part of the building should be burned, for there would be, in such a case, an executed intention "to cause the building to be burnt." An attempt to commit arson was an indictable misdemeanor at common law, and this statute was intended to punish a like attempt,

The State of Iowa v. Johnson.

though the fire should be put out or go out itself before consuming any part of the building. Nor can it make any difference that the material used was a candle instead of hay, shavings, straw or anything else. If the intention existed, and the candle was placed and left lighted in a position to consummate that intent, the offense is complete. (1 Bishop, § 576, *et seq.*) The case before us is a fair illustration of the correctness of these views. According to the testimony a piece of candle three or four inches long wrapped with paper and corn husks was found burning in the hay, placed upright and in a hole or cavity made therein from twelve to twenty inches deep. But for the discovery, the destruction of the barn, in whole or in part, would as certainly have followed as though a match or torch had been applied to the hay. And indeed if there was a felonious intent, the means adopted show a more studied and carefully planned purpose than if the more combustible material had been at once ignited. For, before the probable discovery of the fire, the perpetrator would have had time to escape from the scene of the conflagration, and thus avoid, the more readily, any chance of detection. In the one case as well as the other, however, the probable, natural and even necessary consequences of the act would be the burning of the building, and the party should be presumed to have equally intended the same, it being shown, of course, that the act of thus leaving and placing the candle or igniting the hay was intentionally performed. We conclude, therefore, that this count does charge an indictable offense, and that thus far appellant has no just ground of complaint.

Objections are urged to the refusing and modifying of certain instructions. Some of those refused do not

2. INSTRUC- seem objectionable. All the instructions given
TIONS:
record. are not before us, and it is not improbable that the refusal was for the reason that the jury was already

sufficiently charged upon the points therein contained. Indeed, it would not be easy to otherwise sustain the action of the court. The modifications do not seem to have been material, or of such a character as to work any possible prejudice to defendant.

With this brief reference to the instructions, we pass to the last point in the case, which involves the inquiry, whether the testimony warranted the verdict, and we are brought unhesitatingly to the conclusion, that it did not. It is all before us, and after giving it our united and careful attention, we are constrained to hold that for this cause a new trial should have been granted. Without undertaking to give it in detail, we shall state generally its purport and bearing.

That the lighted candle was found in the hay, in the situation already described, is a fact of which there is no fair room for doubt. But did the defendant put it there? The State claims that he did and must so show, and yet instead of establishing this fact beyond a reasonable doubt, there is not, to our minds, even a preponderance of evidence in favor of such a claim. This conclusion we reach too, after giving all proper weight to the verdict, and the action of the court below in overruling the motion for a new trial.

3. CRIMINAL LAW: arson: evidence.

The candle was discovered about seven o'clock in the evening. The defendant is a man advanced in years, and was seen by a neighbor at his home, a quarter of a mile from the barn, engaged at his ordinary duties, as a farmer, at six o'clock, or fifteen minutes later, of the same evening. Soon after the discovery of the alleged attempted arson, he was in his house, reading, and in a short time retired to rest, where he was found by the officers at eleven o'clock the same night. He was a neighbor of the owner of the barn, and they were intimate and friendly, and had been for twenty-five years. There is no scintilla

of evidence showing ill will. No motive is shown or even suggested from all the circumstances. He had no interest in destroying the barn, for no possible advantage, pecuniarily or otherwise, could accrue to him thereby. No threats are shown nor preparations for the commission of the crime. There is no proof that he was seen about or near the barn, nor that the candle was made or came from his house. On the contrary, the circumstances tend strongly to show that it was not made there. His deportment seems to have been natural, affording no supposition of a guilty conscience. Indeed the only effort to connect him with the alleged crime, is the proof in relation to certain footsteps leading to and from the vicinity of the barn to defendant's house, corresponding in form and dimensions with his boots. And yet these, even, are not traced to the barn, and could as well be made, as far as satisfactorily traced, in going to and from defendant's field as in going to the barn. And though at the barn, in view of the friendly relations existing between the parties, they do not necessarily imply that he was there for a criminal purpose. The owner of the barn was absent from home during the afternoon, as was also defendant's family. The alleged attempt at burning was made November 1, 1862. The feeding was done by the owner's son about dusk, and before he returned, and it was half an hour or an hour after this before the candle was discovered. The son threw hay from the mow when feeding that evening. The only legitimate inference is, that the candle was put there after the feeding, if by any one having a criminal intent; otherwise it would have been seen by the son. Now, was this proof identifying the footsteps sufficient to warrant a conviction? In this fact we have the only circumstance connecting the defendant with the act. All the other circumstances are entirely inconsistent with his guilt; and yet to justify the verdict it is necessary, not only that

the circumstances should all concur to show that he committed the crime, but that they all be inconsistent with any other rational conclusion. (3 Greenl. Ev., § 137, *et seq.*, and notes and cases there cited.)  It would certainly be a most dangerous precedent, to allow a conviction to stand, having so little to sustain it, and so much to show its inconsistency with the actions, conduct and motives of men.  If the least ill will was shown, if any motive appeared, if there was any act, threat or deed of defendant tending to probably connect him with the offense, we might deem it our duty to allow the verdict to stand.  But in a case so barren of every element pointing to the defendant as the guilty party, aside from the uncertain indicatory matter of the foot prints, we cannot, consistently with our views of the law, and what is due to a prisoner charged with a crime involving his personal liberty, do otherwise than order a new trial.  For the rules governing in questions of this character, see *The State of Iowa* v. *Tomlinson*, 11 Iowa, 401;  *Cross* v. *Same*, 12 Id., 66.

Reversed, remanded, and *venire de novo* awarded.