STATE, Respondent, *v.* McCLAIN et al., Appellants.

(No. 5,890.)

(Submitted May 12, 1926. Decided May 25, 1926.)

[246 Pac. 956.]

*Criminal Law—Larceny of Livestock—Evidence—Insufficiency —Cross-examination — Instructions — Objections—When Too General.*

Jury—Judge of Credibility of Witnesses and Weight of Testimony.
　　1.　It is the province of the jury to pass upon the credibility of the witnesses in a criminal prosecution, as well as the weight to be given to their testimony.

Larceny of Livestock—Evidence—Insufficiency as to One of Two Defendants.
　　2.　Where one of two defendants charged with the larceny of a cow was not present when his codefendant branded the animal with the other's brand, and there was no evidence showing that the latter authorized the former to brand it, or that he aided and abetted, or advised and encouraged the commission of the act, or concealed the offense or harbored or protected the offender after he knew of the act, the evidence *held* insufficient to warrant his conviction.

Same—Ratification of Criminal Act—What Insufficient.
　　3.　Mere silence on the part of one of two defendants charged with the larceny of a cow, when advised of the act of his codefendant in branding the animal with his (defendant's) brand, was insufficient to show ratification of the unauthorized act.

---

1.　See 16 R. C. L. 183.
2.　See 1 R. C. L. 138.

Same—Evidence of Other Criminal Acts—Admissibility.
  4.  Evidence that at about the time and near the place where
the animal with the larceny of which defendant was charged, was
branded with his brand, the officer testifying had found other
cattle bearing brands which had been defaced or worked over,
was admissible.

Same—Extent of Cross-examination on Collateral Matters—Discretion.
  5.  While the statute with relation to cross-examination of wit-
nesses (sec. 10665, Rev. Codes 1921) should be liberally con-
strued and the extent to which a witness may be cross-examined
with respect to collateral matters is largely within the discretion
of the trial court, where the evidence sought to be elicited is
clearly immaterial for any purpose, the court may properly ex-
clude it.

Same—Value of Animal Stolen Immaterial—Cross-examination—Proper
Exclusion.
  6.  Under section 11371, Revised Codes, the value of a cow alleged
to have been stolen is not a matter in issue; therefore refusal
to permit a witness to be cross-examined as to the value of the
animal was not an abuse of discretion. (See par. 5, above.)

Same—"Principals"—Definition—Faulty Instruction.
  7.  An instruction defining "principals" as all persons who "aid
or abet" in the commission of an offense, instead of "aid and
abet" as used in section 10732, Revised Codes, is incorrect.

Trial—Instructions—Settlement—When Objection Too General.
  8.  An objection made at the settlement of the instructions in a
criminal case that a certain paragraph thereof "is not applicable
to the facts of this case" is insufficient, under section 11969,
Revised Codes, to warrant review of alleged errors urged under the
specification relating thereto.

---

  [1–3]  Criminal Law, 16 **C. J.**, sec. 1268, p. 639, n. 83; sec. 2290,
p. 929, n. 86; sec. 2291, p. 930, n. 93. Larceny, 36 **C. J.**, sec. 483,
p. 899, n. 34; p. 903, n. 35.
  [4]  Criminal Law, 16 **C. J.**, sec. 1170, p. 603, n. 81, 86.
  [5, 6]  Criminal Law, 17 **C. J.**, sec. 3584, p. 246, n. 72; sec. 3658,
p. 314, n. 59. Statutes, 36 **Cyc.**, p. 1188, n. 59. Witnesses, 40 **Cyc.**,
p. 2493, n. 37; p. 2495, n. 39.
  [7]  Criminal Law, 17 **C. J.**, sec. 3751, p. 368, n. 5.
  [8]  Criminal Law, 16 **C. J.**, sec. 2370, p. 973, n. 85; 17 **C. J.**,
sec. 3335 p. 70, n. 42.

*Appeal from District Court, Big Horn County; Robert C.
Stong, Judge.*

BARNEY McCLAIN and Greeley Hughes were convicted of
larceny, and they appeal from the judgment and an order deny-
ing them a new trial. Judgment reversed as to McClain, and
affirmed as to Hughes.

---

  5.  See 28 R. C. L. 608.

*Messrs. Guinn & Maddox,* and *Mr. Glenn Kinsley* of the Bar of Sheridan, Wyoming, for Appellants, submitted a brief; *Mr. C. C. Guinn* and *Mr. Kinsley* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. S. R. Foot,* Assistant Attorney General, and *Mr. T. H. Burke,* County Attorney of Big Horn County, submitted a brief; *Mr. S. R. Foot* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

These defendants were charged with the larceny of a cow, the property of Mrs. Martha Chatham; they were convicted and have appealed from the judgment and from an order denying them a new trial.

The evidence introduced by the state tends to establish the following facts: About July 20, 1925, these defendants and other men were engaged in a general roundup of cattle on the Ash Creek range in Big Horn county. Several head of cattle had been gathered near a corral on Ash Creek, and among these cattle was the cow in question—a dehorned, red cow with a white face, branded Lazy E Bar Diamond on the left side. Sylvester Hardy, who participated in the roundup, recognized this cow as an animal belonging to the Rotten Grass range, 35 or 40 miles away; he imparted this information to defendant Hughes, and told Hughes that he intended driving the cow back to her home range, but Hughes told him not to do so. Early in the afternoon of July 20, McClain left the place, and about an hour after his departure this cow, her calf, and some other calves were driven into the corral by Hughes and the other men then present. While driving the animals into the corral, Hughes remarked that he had purchased this cow for a milch cow, and had paid $70 for her. The cow was roped, thrown, and Hughes then vented or blotted out the Lazy E Bar Diamond brand and branded the cow and also her calf

76 Mont.—23

with McClain's J X V brand; the cow and calf were then turned back on the range.

After his arrest, Hughes had a conversation with the county attorney in which he denied that he had branded the cow or that he had any knowledge of her whatever. The cow belonged to Mrs. Chatham, and her home range was on Rotten Grass Creek. The owner had not sold or otherwise disposed of the animal, and had not authorized anyone to obliterate, vent, or change her brand or place another brand on the cow.

In addition to the foregoing, the witness Hardy testified for the state that on July 21 he had the following conversation with the defendant McClain: "He [McClain] spoke about a yearling, a J X V yearling in the bunch, he bought for $25. He asked me if I didn't think he got it cheap. I told him, 'Yes'; but I told him I didn't think it was as cheap as the cow he got the day before. He said, 'What cow is that?' I said, 'The cow branded J X V yesterday — the cow Greeley [Hughes] had branded.' I believe he asked me what cow, and I said the E Bar Diamond cow. I don't believe he said anything more."

The evidence introduced by the defendant is to this effect: In 1921 Earl McKenna branded some of his young heifers with a Bar E Diamond brand on the left side and turned them on the Ash Creek range in Wyoming but near the Montana-Wyoming line; that among these animals was a dehorned, red heifer with a white face; that McKenna did not see that particular animal thereafter, and in the fall of 1924 spoke to McClain about it; in May, 1925, McKenna told McClain that, if he should find the animal, to brand it with his (McClain's) brand and pay McKenna whatever the animal was worth; that McClain imparted this information to Hughes and instructed Hughes that, if he should find the animal, to place McClain's brand on it, and that through mistake Hughes branded the Chatham cow, believing it to be the animal to which McKenna and McClain referred.

Hughes denied that he had the conversation to which Hardy testified, and likewise denied that he had the conversation with the county attorney referred to above. He testified that the county attorney interrogated him only about a cow branded E Diamond.

McClain testified that in his conversation with Hardy on July 21 the cow in question was not mentioned. He testified further that he noticed the cow among the animals gathered on July 20; that he satisfied himself that it was not the animal to which McKenna referred and therefore he did not mention the matter to Hughes at that time; that later, when Hughes reported to him that he had found and branded the McKenna cow, McClain expressed the opinion that Hughes had made a mistake, and that McClain and Hughes intended to ascertain the owner of the cow in question and make amends for the mistake, but before they could do so they were arrested, charged with this offense.

1. It is contended that the evidence is insufficient to sustain the verdict. Several witnesses testified for the state and an equal or greater number testified for the defendants.

So far as defendant Hughes is concerned, the utmost that [1-3] can be said is that the evidence is in sharp conflict. It was peculiarly the province of the jury to pass upon the credibility of the witnesses and the weight to be given to their testimony. The verdict indicates clearly that the jury believed the testimony produced by the state's witnesses, and discredited the story told by the witnesses for the defendants. Upon this theory there is ample evidence to sustain the conviction of Hughes.

McClain was not present when the cow was branded, and did not know anything of the branding until some time after it was done. There is not any evidence that he ever authorized Hughes to brand this particular animal, or that he was concerned directly in the commission of this offense, or that he aided and abetted, or advised and encouraged its commission, or that he concealed the offense or harbored or protected

Hughes after he knew that the offense had been committed. At best, the state can only contend that, when McClain was advised by Hardy that Hughes had branded this animal, McClain was silent, and that the story told by McKenna, McClain, and Hughes, is so improbable that it did not merit serious consideration. Assuming, as we must, that Hardy's version of the conversation of July 21 is correct, still mere silence on the part of McClain is not sufficient to prove ratification of Hughes' unauthorized act, and, if the jury discredited all of McClain's testimony, it did not aid the state's case against him. We think the evidence is not sufficient to sustain the conviction of McClain.

2. Complaint is made that the state was permitted to introduce evidence of other offenses, but the contention is not [4] well founded in fact. The record discloses that the county attorney made repeated efforts to introduce evidence of other offenses, and, as a part of the foundation for the introduction of such evidence, made proof of McClain's ownership of the Walking Y M Bar brand, and succeeded in having the deputy sheriff testify that, at about the time and near the place where the Chatham cow was branded, he gathered on the range other cattle bearing McClain's brand and also other brands that had been defaced or worked over; but every other attempt by the county attorney to introduce evidence tending to prove other offenses was met by objection in behalf of defendants which was sustained by the trial court. Indeed, the county attorney was not permitted to proceed far enough in laying the foundation that this court can say that the evidence sought to be introduced should or should not have been admitted. It is sufficient to say that the court did not err in admitting the evidence which was admitted.

This subject was considered so fully in *State* v. *Hopkins*, 68 Mont. 504, 219 Pac. 1106, in *State* v. *Cassill*, 70 Mont. 433, 227 Pac. 49, and in *State* v. *Cesar*, 72 Mont. 252, 232 Pac. 1109, and the doctrine of those cases approved in *State* v. *Roop*, 73 Mont. 177, 235 Pac. 336, that there ought not to be

any doubt as to the circumstances under which such evidence is admissible.

3. On cross-examination the witness Hardy was asked these [5, 6] questions:

"Q. At the time that Hughes talked to you about paying $70 for this cow, as you have testified, what did you think, if anything, about that price for the cow?"

"Q. Did you think that price Hughes stated was too much or too little for the cow?" Then, referring to the conversation with McClain, he was asked: "Did you think this price of $70 was a cheap price for the cow?"

To each question an objection by the county attorney was sustained, and the defendants now complain that the cross-examination was restricted unduly. Bearing in mind that on direct examination the witness Hardy had merely testified to conversations with the defendants and that under the statute (section 11371, Rev. Codes 1921) the value of the cow was not a matter in issue, it becomes apparent at once that the court did not err in its rulings. Whatever answer Hardy might have made—whether in his opinion $70 was more or less than the value of the cow—could not tend to prove or disprove that the conversations were had. Section 10665 provides: "The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith," etc. And this court has held uniformly that the statute should be construed liberally (*State* v. *Biggs*, 45 Minn. 400, 123 Pac. 410; *State* v. *Whitworth*, 47 Mont. 424, 133 Pac. 364), but the rule is not without limitations. Where, as in this instance, the evidence sought to be elicited is clearly immaterial for any purpose, the court may properly exclude it (*State* v. *Inich*, 55 Mont. 1, 173 Pac. 230). The extent to which a witness may be cross-examined with respect to collateral matters is largely within the discretion of the trial court (28 R. C. L. 609), and in this instance there was not any abuse of discretion.

4. In Instruction No. 12 given by the court, sections 10731 [7] and 10732, Revised Codes, were copied literally, and the

court then added the following: "The court instructs the jury as a matter of law that an accessory is he who stands by and aids, abets, or assists, or who, not being present, aiding, abetting, or assisting, hath advised, encouraged, aided, or abetted the perpetration of the crime. Our law provides that he who thus aids, assists, advises, or encourages shall be considered a principal, and shall be punished accordingly."

Complaint is made of this added portion, and it is subject to criticism in that the court employed the terms "aid" and "abet" in the disjunctive instead of the conjunctive as they appear in the statute (*State* v. *Allen,* 34 Mont. 403, 417, 87 Pac. 177; *State ex rel. Webb* v. *District Court,* 37 Mont. 191, 15 Ann. Cas. 743, 95 Pac. 593), but, at the time the instructions [8] were settled, the only objection made to this instruction was that "it is not applicable to the facts of this case." Such an objection is not sufficient to suggest the errors now urged (sec. 11969, Rev. Codes 1921; *State* v. *Brodock,* 53 Mont. 463, 164 Pac. 658; *State* v. *Bolton,* 65 Mont. 74, 212 Pac. 504; *State* v. *Cassill,* 71 Mont. 274, 229 Pac. 716). But, even though we consider the alleged errors in giving the instruction, it is manifest that the defendant Hughes was not prejudiced, and as to him this court would not be justified in interfering. (Sec. 12125, Rev. Codes.)

We have examined the other assignments, but they do not merit special consideration.

As to the defendant Hughes we do not find any reversible errors in the record, and as to him the judgment and order denying his motion for a new trial are affirmed.

Because of the insufficiency of the evidence to justify the conviction of defendant McClain, the judgment as to him and the order denying him a new trial are reversed, and the cause is remanded to the district court of Big Horn county, with direction to grant him a new trial.

MR. CHIEF JUSTICE CALLAWAY, and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.

Rehearing denied June 14, 1926.