STATE, Respondent, *v.* LUDWICK, Appellant.

(No. 6,826.)

(Submitted May 8, 1931. Decided May 16, 1931.)

[300 Pac. 558.]

42

*Mr. Fred W. Schilling* and *Mr. Albert Besancon,* for Appellant submitted a brief; *Mr. J. D. Taylor,* of Counsel, submitted a brief in reply to that of Respondent and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, *Mr. S. R. Foot,* Assistant Attorney General, and *Mr. Donovan Worden,* County Attorney of Missoula County, for the State, submitted a brief; *Mr. S. R. Foot* and *Mr. Worden* argued the cause orally.

HONORABLE HENRY G. RODGERS, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, delivered the opinion of the court.

The defendant having been convicted of the crime of arson, has appealed from the judgment of conviction and an order denying him a new trial.

The court instructed the jury: "You are instructed that all ▬ persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, or not being present, have aided and encouraged the commission thereof, are principals in any crime so committed." The defendant objected to the giving of this instruction on the ground that it was not applicable to the facts in the case. The court correctly overruled this objection. In this instruction the court should have used the term "aid *and* abet" instead of "aid *or* abet." But, as this objection to the instruction has been made in this court for the first time instead of in the lower court, the trial court cannot be held

to have erred. (*State* v. *Allen,* 34 Mont. 403, 87 Pac. 177; *State* v. *McClain,* 76 Mont. 351, 246 Pac. 956.)

Two written statements made by the accused were admitted in evidence, and both parties argue the admissibility of these statements as though they had been properly objected to, but the record fails to disclose any objection; it does contain the statement by the court, "Objection overruled." However, neither one of these written statements approached near to being a confession, but were simply admissions which, when considered in connection with other evidence, became very material in the case. It was not necessary to lay a foundation showing that they were made voluntarily in order to justify their admission in evidence. The ruling of the court was correct. (*State* v. *Guie,* 56 Mont. 485, 186 Pac. 329; *State* v. *Stevens,* 60 Mont. 390, 199 Pac. 256.)

Defendant asked the court to give to the jury an instruction submitting to them the question as to whether or not the confessions were admissible in evidence, which the court properly refused. In the first place, there were no confession or confessions introduced in evidence in this case, and if there had been, their admissibility was not a question for the jury to determine. The question of the admissibility of evidence is within the province of the court. (*State* v. *Sherman,* 35 Mont. 512, 119 Am. St. Rep. 869, 90 Pac. 981; *State* v. *Kacar,* 74 Mont. 269, 240 Pac. 365.)

The court correctly refused to give to the jury defendant's offered instruction D-9.

The defendant at one time had been proceeded against as a juvenile delinquent. Over his objection the county attorney was permitted to cross-examine at length as to whether or not defendant had been convicted of two separate felonies, namely, two burglaries, in the juvenile proceedings. The record of this examination is as follows:

"While I lived at Hamilton I was not convicted of felony there on two separate cases. I was not convicted of felony on two separate cases; in fact, I do not know whether it was—

"Q. I will ask you if you weren't convicted of two burglary charges there, each of which were felonies, taken into

court as a juvenile seventeen years of age at that time, * * * and by the court found guilty of two separate felonies?

"Mr. Besancon: Wait a moment. We object to the question as being absolutely untrue. There is no conviction of either one of two felonies of this defendant at Hamilton.

"Mr. Mason: Well, I was asking him—

"Mr. Besancon: Further—wait a moment—that only conviction of felony can be inquired of this defendant on the stand. And further, that the record is the best evidence of a conviction, if you have it.

"Mr. Mason: We have it.

"Mr. Besancon: Well, the law gives the state the right to ask the question—Exception. A. I was not convicted of two charges.

"By the Witness: Asked if I was convicted of any felony at Hamilton I will say I do not know what the—whether it was a felony or not; I was convicted of something. I don't have any independent recollection of what I was convicted of, only that I was thinking that I plead guilty. I told them I was guilty to the juvenile charge. That was not burglary, two separate burglaries, one of a garage and one of a store. It was a pool-hall; there was one of a garage and one of a pool-hall. As to whether they were both felonies, I didn't say a garage, I said a pool-hall.

"Q. And what else? I will ask you if on August 15, 1927, at Hamilton, Montana, in this judicial district, before Judge Self, if you were not taken into court and there the court found you guilty * * * of two separate felonies committed, one at that place known as the Hamilton Garage?

"Mr. Besancon: We object to the system of cross-examination. The record should speak for itself, if they have it. He says they have the record. The record is the evidence.

"The Court: I think you will save time if you ask him what he pleaded guilty to and then if he denies it you can introduce it in rebuttal.

"By the Witness: Asked if I pleaded guilty to entering one of these garages, I will say that I have only been taken up

and questioned by Judge Self, but I have only pleaded guilty to one charge. I pleaded guilty to the charge of entering a pool-hall, the Owl pool-hall at Hamilton, and Clyde Curry was the proprietor. I did not also plead guilty to entering another place at the same time or just before that—not to my knowledge. As to whether that was the Owl pool-hall, that and the Clyde Curry pool-hall is the same. And as to the Hamilton garage, I know nothing of that. I did not know that the entry of both those places or either of them was a felony. I didn't know that. I can't tell you what a felony charge is now; I don't know. I don't know anything about it. Asked if I have been in court before so that I know what court procedure is, I will say, no sir. I don't know anything about it only justice cases.''

The attorney for the defendant, at the close of defendant's cross-examination, with the purpose evidently of convincing the court that the proceeding before Judge Self at Hamilton was a juvenile delinquent case, and that the defendant had not been convicted of a felony or felonies, offered in evidence a certified copy of the order of the court made in the juvenile proceedings, which was contained in the minutes of the court, which order was admitted in evidence. He then moved the court to strike from the evidence all the cross-examination by the county attorney relative to these proceedings, which motion was by the court denied. The cause proceeded to its final conclusion; instructions were settled; and the court upon returning to the bench for the purpose of instructing the jury orally withdrew from the jury the record finding the defendant a juvenile delinquent, and admonished the jury to disregard the same. Its oral statement is as follows: ''Gentlemen, there was received in evidence here a record of the conviction of the defendant Ludwick in the district court of Ravalli county, the record showing that he was adjudged a juvenile delinquent up there at Hamilton. After giving the matter more mature deliberation—that evidence was objected to on the part of the defendant. Mr. Besancon objected to it. And after giving the matter more mature deliberation, I

have decided that the objection should be sustained. No evidence of that judgment up there should have been received. That is, you should not have been permitted to hear that he was ever convicted and adjudged a juvenile delinquent. I will now withdraw from the jury all that evidence and you are instructed to disregard it, banish it from your minds and disregard any evidence of his prior conviction in Ravalli county as a juvenile delinquent, and base your verdict in this cause on the—base it on the other evidence in the case and not on that—not consider that evidence in the case at all.'' The court then proceeded to deliver to the jury its written instructions.

It is probably fair to presume that the court meant by this to order stricken from the evidence the cross-examination of the defendant as to whether or not he had been convicted of a felony or felonies, and it might be barely possible that the jury so understood, but as a matter of fact this order is so framed that all it strikes from the record and all that the jurymen are admonished to disregard is the record showing that the defendant had been adjudged a juvenile delinquent, leaving in this record the entire cross-examination of the defendant as to whether or not he had been convicted of a felony or felonies.

In the first place, the assertion that the county attorney ▮ had a right to ask the questions which he did is evidently based upon the proposition that the statute specifying in what manner a witness may be impeached provides, among other things, that he can be asked as to whether or not he has formerly been convicted of a felony. Whether this is true or not in the ordinary case, it cannot be true in this case. The statute does not mean, and cannot mean, that an attorney who has in his possession a record and who is fully informed and knows that the defendant has only been found to be a juvenile delinquent may foist into the record what amounts to an assertion that he has been convicted of a felony, and such action on the part of the county attorney was misconduct prejudicial

to the defendant. (*State* v. *Jones*, 48 Mont. 505, 139 Pac. 441.)

Section 12276, Revised Codes 1921, provides: "Any child under eighteen years of age, who shall commit any of the acts or do any of the things mentioned in the above section, shall be deemed a delinquent person, and shall be proceeded against as such in the manner hereinafter provided. A deposition of any child under this Act, or any evidence given in such case, shall not, in any civil or criminal or other cause or procedure whatever in any court, be lawful or proper evidence against such child for any purpose whatever, except in any subsequent case against the same child prosecuted under this Act."

In the case of *State ex rel. Palagi* v. *Freeman*, 81 Mont. 132, 262 Pac. 168, 171, Mr. Justice Matthews, speaking for the court in analyzing the Delinquent Children's Act and determining its purpose, stated: "The purpose of such statutes is to save children from prosecution and conviction on charges of crimes committed against the state, and to relieve them from the stigma attaching. to conviction; to guard and protect them from themselves and evil-minded persons with whom they are in contact, including improper home influences, and to train them mentally, morally, and physically, when it appears that they are not receiving such training in the home. It is but an administrative police regulation for the saving of the child and the protection of society, and, in administering the law, the courts to which such administration is entrusted act more in a paternal, than in a judicial, capacity. (*Lindsay* v. *Lindsay*, 257 Ill. 328, Ann. Cas. 1914A, 1222, 45 L. R. A. (n. s.) 908, 100 N. E. 892; *Mill* v. *Brown*, 31 Utah, 473, 120 Am. St. Rep. 935, 88 Pac. 609; *Ex parte Januszewski*, (C. C.) 196 Fed. 123; *Van Walters* v. *Board*, 132 Ind. 569, 18 L. R. A. 431, 32 N. E. 568.)

"The Delinquent Children's Act contained in Chapter 51, Part II of the Codes, is comprehensive and exclusive as to the manner in which such proceedings shall be conducted. Thereunder such children are not to be treated as criminals. They

are not even to be brought into a courtroom for a hearing, but all trials of such children shall be held in chambers or in a room specially provided for the purpose (sec. 12282), and nowhere in the Act is there any provision for arraignment or the entry of a plea. No warrant of arrest is issued, but, where a child is taken into coustody, he or she must be immediately taken before a court, and the judge thereof, in turn, is required to turn the matter over to the probation officer for investigation, and postpone the hearing, from time to time, for that purpose. (Sec. 12280, as amended by Chapter 52, Laws of 1923.) All proceedings under this Act are by petition, and not by indictment or information, as in cases of criminal prosecutions, and thereupon a citation is to be issued requiring those persons mentioned in the petition to appear at a time certain, and 'show cause before the court,' and to 'answer the petition on the return day of the citation.' (Sec. 12279.)

''While section 12279 provides that these persons mentioned therein shall 'show cause,' and shall answer the petition on the return day, the Act clearly contemplates that the citation shall serve the purpose of a summons in a civil action, or citation in a special proceeding. The return day is the day for answer, and, answer having been made, the court fixes a day for trial (sec. 12282), and reasonable opportunity to procure witnesses is to be given the accused and the parents. (Sec. 12280.) Unless, on the return day, the parties signify that they are ready for a hearing, the court is not justified in proceeding with the matter, but should fix a time certain when a hearing will be had.''

The Delinquent Juvenile Act (Rev. Codes 1921, sec. 12275 et seq.) protects the child from his follies, prohibits the proceeding against him for what otherwise would be criminal acts (those punishable by life imprisonment or death alone excepted), provides for a certain degree of secrecy in all proceedings against him as a juvenile delinquent, and relieves him of the handicap, even after he has ceased to be a juvenile,

of having any reference made thereto in any criminal or civil proceedings.

The error in permitting the cross-examination was not lessened by the fact that the court waited until the evidence was closed and it was ready to give to the jury the instructions before attempting to strike the objectionable matter. It was left in the record for the jury to think about, to consider with the other evidence introduced, and, while jurymen are instructed that they are not to form or express any opinion relative to the merits of the case until it is finally submitted to them, they are to follow and keep in mind the evidence, and, as a case progresses, they are analyzing and considering the evidence and to a large degree, at the close of the evidence, their minds have, consciously or unconsciously, reached a conclusion which, of course, dependent upon their ability to keep an open mind, may or may not be the final result of the case.

We are satisfied that the attempt of the court in this case to strike the evidence and admonish the jury to disregard the evidence, did not, and in the very nature of things could not, cure the error. It must be remembered that in this cause the court had admitted evidence which the statute expressly forbids, and it is for this error that the cause must be reversed and a new trial granted.

It has been heretofore held by this court that an order ▆ striking evidence wrongly admitted from the record and admonishing the jury to disregard the same, is sufficient to cure the error, and nothing herein said modifies in the slightest degree any or either of the former opinions in that regard.

The fire occurred one evening at about 8:15, some twenty- ▆ seven miles distant from Missoula. Some time between 10:15 and 12 o'clock defendant had made statements to people in Missoula that the pavilion had burned that evening. He had stated that one Hodell had entered a Yellow Cab office and in his presence said to a Mrs. Jewett that the pavilion had been destroyed by fire. Mr. Hodell was called as a witness and testified that on that evening he was not at any time in

the Yellow Cab office. On cross-examination he was asked, "Mr. Hodell, is it not a fact that after you came back from Potomac the time you say you saw this fire up there, that you went to the Yellow Cab office and that you went in there and that you stepped into the office, Mrs. Jewett was there, defendant Ludwick was standing at the counter in the office, and that you walked up and cashed a check?" This question was one calculated to refresh the recollection of the witness. The objection thereto was sustained; it should have been overruled.

Complaint is made by defendant that certain occurrences at the time of the trial, brought to the attention of the court by means of affidavits filed in support of the motion for a new trial, were prejudicial to the defendant and prevented him from having a fair trial; but, as these claimed prejudicial occurrences will not occur again, we do not pass upon the question raised.

The judgment is reversed and the cause remanded to the district court of Missoula county, with direction to grant the defendant a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES FORD, ANGSTMAN and MATTHEWS concur.