STATE, RESPONDENT, v. ESPELIN, APPELLANT.

(No. 7,749.)

(Submitted January 22, 1938. Decided February 16, 1938.)

[76 Pac. (2d) 629.]

*Mr. George W. Farr,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Carl N. Thompson,* and *Mr. F. F. Haynes,* County Attorney of Rosebud County, for the State, submitted a brief; *Mr. Haynes* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

April 15, 1937, the defendant was found guilty of the crime of arson and thereafter sentenced by the district judge of Rosebud county to serve two years in the state prison. A motion for a new trial was made and denied, and the matter was appealed to this court.

The defendant was found guilty of burning an unoccupied dwelling, in which at the time school furniture and school books were stored. The school building was located some 300 feet from the burned building. The abandoned dwelling was burned some time during the early part of the night of August 2d or early morning of the 3d, 1936, and a very strong chain of circumstantial evidence, tending to incriminate the defendant, shows these facts:

A saddle horse was tied to a post some time during the night of the fire, just across the road a few hundred feet from the burned building; the saddle horse was identified by a broken hoof of the rear right foot which caused a gap or break to appear in the horse's track on the outer rim thereof. On an inspection of the defendant's saddle horse, a gap in the rear right hoof exactly corresponded with the gap in the track. As evidence that the horse had been tied at the particular place it was shown that it had moved from side to side, as horses naturally do when tied or hitched to a post, but it remained headed toward the post. The horse's tracks leading from the home of the defendant, approximately four and a half miles west of the site of the burned building, showed the gait of the horse to the place where the horse was tied to be a walk, and on the return the horse left the place where it was tied at a rapid gait—apparently in a run until it reached and passed over a hill approximately a quarter of a mile south of the site of

the burned building, and from thereon to the home of the defendant the gait appeared to be the same as when going to the site of the burned building. An inspection of the saddle horse owned and ridden by defendant showed a broken place in the corresponding hoof. It was apparent to all who examined the horse and the tracks that the defendant's horse had covered the round trip from defendant's home to the burned building. Near the place where the horse was tied, and again at the site of the burned building, a person's tracks were found by the sheriff of the county and the state fire marshal, and a pair of tennis shoes with corrugated rubber soles was found by the sheriff and marshal under the bed in the defendant's living room, which exactly fitted into the tracks, according to the testimony of the sheriff and fire marshal. Approximately a quarter of a mile from where the horse was tied, and alongside of the route followed by the horse, a scrap of paper was found in which some half a dozen or more matches had been wrapped, and, when found, two or three of the matches had fallen outside of the paper; such scrap of paper was a wrapper that appeared to have been removed from a newspaper upon its being received through the mail, and on the newspaper wrapper the name and address of the defendant was printed. The course, as indicated by the horse's tracks in going to and returning from the place of the burned residence, was through the fields and along a way that was least likely to bring the rider in contact with other persons. The attention of a number of persons was attracted to a mound of ashes within the boundaries of the burned building that extended above the surrounding debris. This mound of ashes was carefully inspected by the sheriff and fire marshal and appeared to be composed of ashes from a burned gunny sack in part, and in part from a twisted string or small rope, and there was also evidence of burned hay. Near this mound of ashes a half-gallon can was found, which a neighbor testified was similar to a can containing maple syrup which he had brought, along with other merchandise, from town to the defendant at defendant's request, and the neighbor testified that defendant, when making the request of the neighbor to bring

the stuff, cautioned him particularly "not to forget his maple syrup," but defendant testified that he "never used syrup of any kind"; the mound of ashes and the can are referred to in the testimony as "the set," and it is the State's contention that the hay, gunny sack, and a can of distillate were used to set the fire. After the arrest of the defendant, the sheriff returned to the premises for further inspection and to obtain additional evidence, and found in the defendant's kitchen a jar of distillate and in the distillate were about two to two and one-half feet of double string or small rope made of binder twine. The twine had obviously been twisted and then doubled, making a small rope of double strength as compared with the single strand of the twine. The sheriff and the fire marshal both testified that a part of the ash found in the heap in the debris heretofore mentioned, before being disturbed, bore strong resemblance to an ash that would remain from burning such twine. The testimony of the defendant was characterized throughout by an irrational attempt to explain incriminating circumstances by recounting alleged acts and events of extreme improbability. Such is the testimony upon which the jury found the defendant guilty of arson.

On the other side of the picture, the defendant is a man of seventy years of age and, according to the evidence, not in the best of health; he was not shown to have been of a meddlesome disposition, nor to have been unpopular in his neighborhood, or eccentric or vicious in any manner; nor is there any motive clearly shown. It was contended by counsel for the State that the act was impelled by the antagonisms engendered by a school election recently had, which resulted in removing the district schoolhouse from approximately a mile north to a site in close proximity to the burned building, which was to be used as a teacherage. But the defendant is a bachelor and does not appear to have taken any very great interest in the election, or in school matters generally, and no reason is shown why the nearby dwelling house was fired and not the schoolhouse itself, except that the defendant and the owner of the dwelling were not on the best of terms.

The site to which the school building was removed is approximately a mile nearer defendant's premises than where previously located. It appears that the only reason that he would have for taking any particular interest in the school election would be the probability of his having become a partisan in the contest on account of the interest of friends or associates. A number of his neighbors testified that he was a good man, and there is nothing in the record to show that he was a disturbing character in his community.

In response to a question from the sheriff at the time of his arrest, defendant named one or two neighbors who might have attempted to "frame" him, but when asked how any of his neighbors could have obtained his horse and taken the shoes from under his bed in order to go to the place where the burned building was located and restore the shoes without disturbing him, he merely stated that he was a sound sleeper and that it might have been done.

In order to affirm the judgment founded on the verdict of the jury, it must be concluded, of course, that the defendant's testimony was false in its essential particulars. The defendant's testimony, by reason of his poor memory and the extremely improbable events and circumstances that he testified to in the attempt to explain away the incriminating circumstances, was not convincing nor reasonably consistent with the undisputed facts, and strongly tends to support the charges against him. Almost the only facts established in his favor are his age, his infirm health, his previous good reputation in the neighborhood, and the absence of an impelling motive.

Four assignments of error are specified, the first of which is failure to give the following instruction: "The court instructs you that where verbal statements of the person charged with a crime are offered in evidence, the whole of such statements must be taken together, as well as that part which is in favor of the accused as that which is against him, and if the part which is in favor of the accused is not disproved, and it is not apparently improbable or untrue when considered with all the other evidence in the case, then such part of the statement

is entitled to as much consideration from the jury as any other part of the statement."

Counsel for defendant under this assignment contends that the State's case is grounded upon the statements made by the defendant to the prosecuting officials, and that otherwise "not anyone would contend that the state had any case at all." On the contrary, it clearly appears to us that the jury must have founded the verdict upon the strong chain of circumstantial evidence which the very lame explanations relative thereto made by the defendant from the witness stand tended to support. Such explanations were so clearly beyond the realm of common experiences as to render them incredible. We do not think the defendant suffered any prejudice by the court's refusal to give defendant's instruction No. 10.

We are also of the opinion that the errors assigned on the court's refusal to give proposed instructions 18 and 22 are likewise without merit. The instructions given were of more than usual length and appear to cover every conceivable phase of the crime of, which the defendant was charged. Under the established rule, the instructions must be considered as a whole (*Russell* v. *Sunburst Ref. Co.*, 83 Mont. 452, 72 Pac. 998; *State* v. *Colbert*, 58 Mont. 584, 194 Pac. 145), and, so considered, we think the instructions eminently fair to the defendant. When instructions as a whole correctly state the law, error does not exist. (*State* v. *Brooks*, 23 Mont. 146, 57 Pac. 1038.)

The substance of the last assignment of error is that the court erred in denying defendant's motion for a new trial "because of the insufficiency of the evidence to sustain the verdict."

For the reasons heretofore stated, and particularly by reason of the absence of any proof showing an impelling motive, the guilt of the defendant appears almost incredible; but, as was said in the case of *State* v. *Wells*, 33 Mont. 291, 83 Pac. 476, 477, "While the evidence * * * is not as convincing as it might be, the incriminatory circumstances proven made out a case for the jury." Here no one fact can be said to establish the defendant's guilt, but all the circumstances, many

238

of them unimportant standing alone, taken together and unexplained, are sufficient to support the verdict.

The jurors are the sole judges of the credibility of the witnesses. (*State* v. *Jones,* 32 Mont. 442, 80 Pac. 1095; *State* v. *Vinn,* 50 Mont. 27, 144 Pac. 773; *State* v. *Russell,* 52 Mont. 583, 160 Pac. 655; *State* v. *McClain,* 76 Mont. 351, 246 Pac. 956; *State* v. *Harkins,* 85 Mont. 585, 281 Pac. 551.) Their power to pass upon the credibility of the witnesses must not be exercised arbitrarily but in subordination to the rules of evidence (secs. 10508, 10672, 10698, Rev. Codes; *State* v. *Wilson,* 76 Mont. 384, 247 Pac. 158), and the weight and effect of the evidence is a matter wholly within their province. (*State* v. *Russell,* supra; *State* v. *Kacar,* 74 Mont. 269, 240 Pac. 365; *State* v. *McClain,* supra; *State* v. *Benson,* 91 Mont. 21, 5 Pac. (2d) 223.)

The jury, composed of the defendant's peers, heard the witnesses, including the defendant, testify, and observed their demeanor on the witness stand, and, being triers of the facts (*State* v. *Gleim,* 17 Mont. 17, 41 Pac. 998, 31 L. R. A. 294, 52 Am. St. Rep. 655; *State* v. *Gay,* 18 Mont. 51, 44 Pac. 411), it is not within the powers of this court to set their verdict aside unless it is clearly obvious that there has been a miscarriage of justice. The jury here appeared to be clearly aware of their obligations and conscientious in the discharge thereof. We think this is evidenced by the fact that they returned their verdict of guilty against the defendant believing the evidence called for such a verdict, but obviously out of sympathy, possibly on account of his advanced age, accompanied the verdict by a recommendation that the court give the defendant a suspended sentence.

We find no error in the record, and the judgment is affirmed.

Mr. Justice Stewart concurs.

Mr. Chief Justice Sands:

I concur in the opinion written by Justice Morris and add as my individual observations:

The law stated by both decisions may not be disputed, but I apply the law to the undisputed facts differently from the opinion written by Judge Anderson. It seems fair to assume that the horse's peculiar tracks identify them to be the tracks of defendant's saddle horse, and that the footprints identify them as made by the shoes of the defendant. The burned portions of the twisted string used as a fuse correspond to the string found in the bottle of distillate in defendant's home. The identification of the syrup can found at the scene of the fire would not alone furnish sufficient evidence of ownership of itself, but was a significant circumstance entitled to some weight.

All these facts, together with others not mentioned in either opinion, furnish as convincing a case of guilt as any case of similar evidence I ever heard or read. The proof is so convincing that as a juryman or as a court I would unhesitatingly vote to hang a defendant without additional proof. Absolute proof is not practicable. If the law required such, few crimes would be punished.

However, there is one other consideration that counts much with me. The defendant took the witness stand in his own behalf. His testimony, weighed in connection with the other testimony almost undisputable in character in every particular, leaves no doubt in my mind that he added the crime of perjury to the crime of arson. The latter crime may have been committed in the heat of passion, or under a temporary hallucination, but the perjury was committed deliberately under the widespread false notion that since a defendant is not then on trial for perjury and later charges upon that crime are seldom filed, any testimony given by the defendant, however improbable, is practically safe from punishment. The improbable testimony of defendant exhausts my sympathy and removes any possible doubt of defendant's guilt from my mind.

I cannot pass this case without expressing my appreciation of the fine detective work of Fire Marshal J. W. Carney and the witnesses who helped him ferret out this crime, and the very effective prosecution of this case by County Attorney F. F.

240

Haynes. Such services by public officials are worthy of comment.

MR. JUSTICE ANDERSON:

I dissent from that portion of the majority opinion holding the evidence sufficient to sustain the verdict of guilty.

In the case of *State* v. *Wallette,* ante, p. 15, 75 Pac. (2d) 799, we said: ''Where a criminal prosecution is dependent upon circumstantial evidence, a conviction cannot be sustained unless the criminatory circumstances point so clearly to defendant's guilt as to be inconsistent with any other rational hypothesis. (*State* v. *Ebel,* 92 Mont. 413, 15 Pac. (2d) 233; *State* v. *Hood,* 89 Mont. 432, 433, 298 Pac. 354; *State* v. *Woods,* 54 Mont. 193, 169. Pac. 39; *State* v. *Russell,* 93 Mont. 334, 18 Pac. (2d) 611.) Convictions may not be founded upon conjectures, however shrewd, nor upon probabilities, however strong (*State* v. *Lund,* 93 Mont. 169, 18 Pac. (2d) 603; *State* v. *Woolsey,* 80 Mont. 141, 259 Pac. 826; *State* v. *Taylor,* 51 Mont. 387, 153 Pac. 276; *State* v. *Riggs,* 61 Mont. 25, 201 Pac. 272), but only upon evidence which establishes the guilt of the defendant beyond a reasonable doubt, i. e., upon proof such as logically compels the conviction that the charge is true (*State* v. *Kerrigan,* 87 Mont. 396, 287 Pac. 942; *State* v. *Mullins,* 55 Mont. 95, 173 Pac. 788; *State* v. *Cooper,* 78 Mont. 35, 252 Pac. 376). All of the foregoing cases recognize the rule that if circumstantial evidence meets the tests announced in these decisions, it is sufficient to sustain a conviction.''

In my opinion, the evidence does not meet the test set forth in the foregoing quotation. The evidence of the horse tracks, while admissible as some evidence of the presence of the accused at the scene of the fire, additional evidence is necessary to establish guilt. (Curtis on Arson, sec. 320, p. 339; *State* v. *Melick,* 65 Iowa, 614, 22 N. W. 895; *Benge* v. *Commonwealth,* 258 Ky. 600, 80 S. W. (2d) 569.) From the evidence relative to these horse tracks and the condition of the hoof of the defendant's horse, the jury might well presume or infer that defendant's horse was at the points testified to with relation to the location of the

horse tracks. They might not, however, based on that inference, proceed to infer further that the defendant was there present at the time the tracks were made. Someone else might have ridden the horse to that point.

In *Doran* v. *United States Building etc. Assn.*, 94 Mont. 73, 20 Pac. (2d) 835, 837, it was said: "From one fact found another may be presumed if the presumption is a logical result; but to hold that a fact presumed at once becomes an established fact for the purpose of serving as a basis for a further presumption or inference would be to spin out the chain of presumptions into the barest region of conjecture. (*First Nat. Bank of Glendive* v. *Sorenson*, 65 Mont. 1, 210 Pac. 900; *Kern* v. *Payne*, 65 Mont. 325, 211 Pac. 767.)" We approved this rule in *Ashley* v. *Safeway Stores, Inc.*, 100 Mont. 312, 47 Pac. (2d) 53. The rule is everywhere recognized, as evidenced by the note in 95 A. L. R. 162.

A conviction cannot be sustained where there is no evidence other than footprints to identify the guilty incendiary. (Curtis on Arson, sec. 504; *Shannon* v. *State*, 57 Ga. 482; *Carlton* v. *People*, 150 Ill. 181, 37 N. E. 244, 41 Am. St. Rep. 346; *State* v. *Johnson*, 19 Iowa, 230; *State* v. *Moffitt*, 31 Iowa, 316; *Hightower* v. *State*, 91 Tex. Cr. Rep. 187, 237 S. W. 1112; *White* v. *State*, 93 Tex. Cr. Rep. 532, 248 S. W. 690.) Yet, dependable identification of the tracks may, with other probative evidence of guilt, enable the court to decide that the evidence is sufficient, such as threats to commit the crime made by the defendant. (*Ethridge* v. *State*, 124 Ala. 106, 27 So. 320; *State* v. *Millmeier*, 102 Iowa, 692, 72 N. W. 275; *State* v. *Fain*, 177 N. C. 120, 97 S. E. 716.) There were no threats shown here, and neither was there shown any motive for the alleged crime.

There is no presumption that the accused wore the shoes that made the footprints. (1 Wharton on Criminal Evidence, 11th ed., p. 186; *Herring* v. *State*, 122 Miss. 647, 84 So. 699.) The jury might infer from the proof relative to the footprints that the prints were made by defendant's shoes, or others of the same size and kind, but on the authority cited it could not infer

from this inference that the defendant was there, and then, based on these various inferences, that the defendant set the fire.

A syrup can was found at the scene of the fire. The defendant had one like it. No proof was offered identifying it as the property of the defendant. The same is true of the string in his house and the ashes of the string found at the fire. The other slight circumstances on which the majority opinion rests are less convincing than those which we have mentioned. A careful analysis of all of them, including those I have discussed, shows that all of them require the founding of an inference on an inference, and then, from the entire collection of inferences founded on the inferences, the further inference must be indulged that the accused was the one who set the fire. When it is necessary to resort to this process of reasoning to sustain a conviction, as demonstrated by our decisions, such a conviction is based on conjecture; therefore, it cannot stand. The judgment should be reversed.

Mr. Justice Angstman:

I concur in the above dissenting opinion of Mr. Justice Anderson.